1
2
3
4                          UNITED STATES DISTRICT COURT
5                        NORTHERN DISTRICT OF CALIFORNIA
6
7    CITY OF PONTIAC GENERAL              Case No.  20-cv-06651-JST   (TSH)
     EMPLOYEES' RETIREMENT SYSTEM,
8
                    Plaintiff,            **DISCOVERY ORDER**
9
         v.                               Re: Dkt. No. 62
10
     WESLEY G. BUSH, et al.,
11
                    Defendants.
12

13          The City of Pontiac General Employees' Retirement System ("Plaintiff") has filed this

14   shareholder derivative action on behalf of nominal party Cisco Systems, Inc., against its Board of

15   Directors and Chief Executive Officer for breach of fiduciary duty, unjust enrichment and

16   violation of federal securities laws.  This lawsuit follows Plaintiff's August 5, 2020 pre-suit

17   demand on the Cisco Board, which was denied on December 10, 2020, after this lawsuit was filed.

18          In brief, the Complaint alleges that since at least 2015, Defendants publicly misrepresented

19   Cisco's success as an industry leader in top leadership diversity and as a company that effectively

20   promotes diversity throughout its ranks.  The Complaint further alleges that in reality, there is a

21   visible absence of African Americans in leadership positions across Cisco, including no African

22   Americans on Cisco's Board.  Cisco's senior Executive Leadership Team is likewise devoid of

23   any African Americans, and the noticeable lack of African Americans at Cisco extends deep into

24   the company, that is to the vice president, leadership and people manager levels as well.  Although

25   each of the Defendants was aware of this reality between 2015 and 2020, and that this situation

26   has persisted for years, Defendants repeatedly represented that "Cisco regularly evaluates the need

27   for board refreshment" and that, "[a]s a part of its consideration of director succession," the Board

28   "believes it is important to consider diversity of race . . . in evaluating board candidates."  Cisco

United States District Court
Northern District of California

Systems, Inc., Proxy Statement (Sch. 14A) (Oct. 22, 2019) at 4-5.

In response to the Complaint, the individual Defendants have filed a motion to dismiss at ECF No. 45.  In addition, nominal Defendant Cisco has filed a motion to dismiss or terminate the derivative litigation.  ECF No. 48.  The governing statute provides that "[i]n any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party."  15 U.S.C. § 78u-4(b)(3)(B).  *See In re Marvell Tech. Group Ltd. Derivative Litig.*, 2007 WL 1545194, *2 (N.D. Cal. May 29, 2007) ("The discovery stay of sub-part (b)(3) applies to 'any private action arising under' the Securities Exchange Act of 1934."); *In re Altera Corp. Deriv. Litig.*, 2006 WL 2917578, *1 (N.D. Cal. Oct. 11, 2006) ("The federal courts have previously applied the PSLRA discovery stay to shareholder derivative actions alleging violations of federal law.").

The Court treats the joint discovery letter brief at ECF No. 62 as a motion by the Plaintiff for particularized discovery.  Plaintiff advances no argument why discovery is necessary to preserve evidence.  Therefore, the Court must decide whether discovery is necessary "to prevent undue prejudice to that party."

## A.     Whether the Pending Motions Warrant Discovery

As noted, there are two pending defense motions that seek to end this case.  If Plaintiff needs discovery to be in a position to oppose either motion, then denying it that discovery would unduly prejudice it.  But if Plaintiff can be expected to oppose both motions without doing any discovery, there would be no undue prejudice in disallowing discovery.  So, the Court will analyze the nature of these motions.

### 1.     ECF No. 45

This is a motion to dismiss the Complaint brought by the individual Defendants.  They make four arguments.  First, Defendants argue that the allegations in paragraph 101 of the Complaint fail to satisfy the particularity requirement in Federal Rule of Civil Procedure 23.1(b)(3).  Second, Defendants argue that the Complaint fails to state a claim under Section 14(a)

United States District Court
Northern District of California

2

of the Exchange Act.  Third, Defendants argue that the Complaint fails to state a claim for breach of fiduciary duty.  Fourth, Defendants argue that the Complaint fails to state a claim for unjust enrichment.

This motion to dismiss is a pure attack on the sufficiency of the Complaint as a pleading. No discovery is necessary for Plaintiff to respond to this motion.

### 2.    ECF No. 48

This motion by Cisco is two different things.  First, it is a motion to dismiss, arguing that the Complaint fails to satisfy the particularity requirement in Rule 23.1(b)(3).  This is a pleadings motion (duplicative of the same argument brought by the individual Defendants), and no discovery is necessary for Plaintiff to respond to it.

Second, this is a motion to terminate the derivative litigation on the ground that Cisco's Board performed a reasonable and good faith investigation and that its resulting decision to reject Plaintiff's demand that the Board pursue these claims is entitled to deference under the business judgment rule.  This type of motion can warrant discovery.

"In *Burks v. Laster*, 441 U.S. 471 (1979), the Supreme Court held that a special litigation committee has the power to terminate a derivative action to the extent allowed by the law of the state of incorporation."  *Johnson v. Hui*, 811 F. Supp. 479, 483 (N.D. Cal 1991).  Here, it appears that Cisco was a California corporation at the time Plaintiff made its demand through the time the Board rejected it, *see* Complaint ¶ 23; Declaration of Dean Kristy, ECF No. 50, ¶¶ 18, 20; *id*., Ex. A (Cisco's Secretary certified the December 10 Board Resolution "on behalf of Cisco Systems, Inc., a California corporation"), though at the time the motion to terminate was filed, as today, it was a Delaware corporation.  Kristy Decl., ECF No. 50, ¶ 19.  California and Delaware both recognize the special litigation committee defense.  *See Desaigoudar v. Meyercord*, 108 Cal. App. 4th 173, 185 (2003); *Kaplan v. Wyatt*, 484 A.2d 501, 504 (Del. Ct. Chancery 1984), *aff'd*, 499 A.2d 1184 (Del. 1985).  At oral argument, the parties agreed that for purposes of this discovery motion, it is immaterial which state's law governs the underlying motion to terminate.

"Because the power to bring a motion to terminate a shareholder derivative suit . . . emerges from state law, the place of such a motion within the procedural framework established

3

1   by the Federal Rules of Civil Procedure is unclear, at least at first glance."  *Johnson*, 811 F. Supp.

2   at 484.  It appears that the most common approach is to treat it as a motion under Federal Rule of

3   Civil Procedure 23.1.  *See id.*; *see also IP Telesis Inc. v. Velocity Networks Inc.*, 2013 WL

4   12126105, *2 (C.D. Cal. Feb. 8, 2013) ("A corporation may terminate the action by filing a

5   motion pursuant to Federal Rule of Civil Procedure ('Rule') 23.1 for failing to meet the

6   requirements of a derivative action."); *Kokocinski v. Collins*, 850 F.3d 354, 361 (8th Cir. 2017)

7   ("We agree with the district court and the Eleventh Circuit that the closest fit for a motion to

8   terminate in the Federal Rules is Rule 23.1(c)."); *Peller v. Southern Co.*, 911 F.2d 1532, 1536

9   (11th Cir. 1990) ("[S]hareholder derivative suits are governed by Fed. R. Civ. P. 23.1.").

10         Both federal and state cases recognize that discovery may be permitted when it is

11   necessary for the plaintiff to effectively respond to a motion to terminate, which is not all the time.

12   *See, e.g., Klein ex rel. Klein v. FPL Group, Inc.*, 2003 WL 22768424, *8 (S.D. Fla. Sept. 26, 2003)

13   ("In addition to the issues of the independence and good faith of the board members who made the

14   decision to file the Motion to Dismiss, the discovery needs to be broad enough to enable the Court

15   to determine whether the decision was based on a 'reasonable investigation.'  That determination

16   necessarily implicates the merits of the controversy to at least a limited extent.  In order for the

17   Court to determine whether the investigation was conducted in good faith and was reasonable, the

18   Court needs to know what was done, and what information was considered by the

19   decisionmakers."); *Kaplan*, 484 A.2d at 507 ("The 'opportunity' to make a record on the motion

20   also includes the potential for limited discovery.  The only purpose of such limited discovery in

21   this setting, however, is to assist the Court in its inquiries into the good faith and independence of

22   the Committee as well as its inquiry into the bases supporting the conclusions of the Committee.").

23         Under the case law, a major factor in determining whether to allow discovery is how

24   thorough the special litigation committee's report is.  *See Kokocinski*, 850 F.3d at 359-68 (SLC

25   issued a 69-page report "setting forth detailed factual findings," after having interviewed sixty

26   individuals and reviewed over 2.6 million documents; held: no abuse of discretion in declining to

27   order discovery); *Kaplan*, 484 A.2d at 510 ("[T]he developing rule of thumb in this jurisdiction

28   would appear to be that a report by a Special Litigation Committee recommending dismissal of a

United States District Court
Northern District of California

derivative suit must be at least 150 pages in length, exclusive of appendicies and attachments. Presumably, length is thought to be supportive of thoroughness and good faith on the part of the Committee.  Correspondingly, it is apparently feared that a shorter report might be thought to be indicative of the converse."); *Sutherland v. Sutherland*, 2008 WL 571253, *1 (Del. Ct. Chancery Feb. 14, 2008) ("I conclude that the pending motion to dismiss should, in fairness to the plaintiff, be determined on the basis of the extensive record developed in discovery into the SLC's independence and good faith" because "[t]he Report summarizes the investigation done and factual conclusions reached by the SLC in a format that entirely omits any record citation, either to documentary evidence or to the witness summaries the SLC's counsel prepared in the course of its investigation.  The Report does contain an appendix but it is limited to certain analyses of one particular aspect of the complaint.  None of the source documents or testimonial evidence is found therein.").[1]

Two prior decisions in this District have analyzed this framework to determine whether discovery should be permitted in connection with a motion to terminate derivative litigation.  In *In re KLA-Tencor Corp.*, No. 06-cv-3445, ECF No. 263 (N.D. Cal. May 14, 2008), the Court observed that "[c]ases addressing a motion to terminate discovery vary in their assessments of the appropriate scope of discovery.  It appears that the cases which found the SLC Report sufficiently thorough allowed more limited discovery (such as the report and depositions of SLC members only).  On the other hand, cases granting more expansive discovery found the report lacking or otherwise had reason to question the independence or good faith of the SLC (e.g., when there is a so-called 'whitewash' – a recommendation by the committee that all claims be dismissed notwithstanding evidence of wrongdoing)."  In that case, the SLC Report set forth with some specificity the investigation the SLC undertook and some of the reasons underlying its

---

[1] *See also Deal v. Tugalo Gas Co.*, 2018 WL 4255857, *6-*9 (N.D. Cal. Ga. Sept. 6, 2018) (denying discovery when the reports by the Litigation Review Committee and the Demand Review Committee demonstrated a thorough investigation), *aff'd in relevant part*, 991 F.3d 1313, 1321-22 (11th Cir. 2021) ("the LRC made sure that all the expenses that the complaint concretely alleged to be fraudulent were legitimate and that Gilmer and his sister had reimbursed the company for any other personal expenses"; given the thoroughness of the LRC report, "Deal had no right to discovery at this stage of the litigation.").

United States District Court
Northern District of California

conclusions. *Id*. at 3. However, the report did not discuss the particular evidence (i.e., documents and information from interviews) that supported each of the SLC's findings and conclusions. *Id*. Accordingly, the Court ordered production of the Report; minutes of SLC meetings; the data underlying the SLC's calculations; transcripts, notes and summaries of witness interviews conducted by the SLC (or that it relied on); certain other written discovery; and depositions of the SLC members. *Id*. at 4.

In *In re Trident Microsystems, Inc.*, 06-cv-3440, ECF No. 131 (N.D. Cal. April 17, 2009), the Court found that "the Special Litigation Committee's report merely states its conclusions without any details regarding the evidentiary bases for those conclusions." *Id*. at 2-3. The Court therefore ordered production of all documents the SLC reviewed. *Id*. at 2.

**B.     Whether Discovery Is Appropriate for the Motion to Terminate in This Case**

Cisco filed two declarations in support of its motion to terminate. ECF Nos. 49, 50. The first is the Declaration of Michael D. Capellas, ECF No. 49. Capellas is a member of Cisco's Board of Directors. *Id*. ¶ 1. He was also a member of the Demand Review Committee (the "Committee") the Board established to review and investigate the matters set forth in the Plaintiff's pre-suit demand, and to make recommendations to the Board as to what actions would be in the best interests of Cisco and its shareholders with respect to the alleged claims. *Id*.

Capellas's declaration summarizes the Committee's work. It was established at a Board meeting on August 20, 2020. *Id*. ¶ 5. Capellas and another Board member, Rod McGeary, served on the Committee. *Id*. ¶ 7. The Committee retained the law firm of Fenwick & West LLP as outside counsel to assist with its work. *Id*. ¶ 8. The Committee's investigation lasted three-and-a-half months. *Id*. ¶ 9. The scope of the investigation is memorialized in the Board's December 10, 2020 Resolution rejecting Plaintiff's demand. *Id*. The investigation included interviews of 22 witnesses, including Cisco's CEO, Executive Vice President and Chief People Officer, and Chief Inclusion and Diversity Officer. *Id*. ¶ 10. It included analysis of Cisco's diversity statements, programs and initiatives, as well as other documents. *Id*. The Committee was aware that Cisco had previously had an African American Board member, and it considered the challenges Cisco has encountered in recruiting African American director candidates. *Id*. ¶ 11. Following this

investigation, the Committee concluded that Cisco's disclosures were accurate, *id.* ¶ 12, and that pursuing Plaintiff's claims would be contrary to Cisco's best interests. *Id.* ¶ 13. On December 10, 2020, the Committee presented its findings and recommendation to the full Board, which adopted them. *Id.* ¶ 14.

The second declaration is by Dean Kristy, outside counsel at Fenwick. ECF No. 50. This declaration largely repeats Capellas's declaration, but adds some additional details on certain points. Kristy states that the investigation reviewed approximately 3,000 documents, totaling 50,000 pages. *Id.* ¶ 7. He provides some additional detail on the 22 witnesses. *Id.* ¶ 8. Exhibit A to his declaration is the December 10 Board Resolution rejecting Plaintiff's demand. *Id.* ¶ 6. Exhibits B, C and D are excerpts of Cisco's public statements cited in the Complaint. *Id.* ¶¶ 13-15. Exhibits E, F and H are SEC filings by Cisco. *Id.* ¶¶ 16, 17 & 19. Exhibits G and I are Cisco's restated articles of incorporation and amended and restated certificate of incorporation. *Id.* ¶¶ 18, 20. These documents show that at the time Plaintiff submitted its demand through the time the Board rejected it, Cisco was a California corporation, and thereafter it became a Delaware corporation. Finally, Exhibit J is a copy of Cisco's Social Justice Beliefs and Actions, which is an example of its diversity initiatives and programs referred to on page 3 of the December 10 Board Resolution. *Id.* ¶.

The Court concludes that on this record, discovery is warranted concerning the motion to terminate. As discussed above, case law favors broad discovery when the special litigation committee's report is short, lacks detail, fails to cite or discuss evidence, or has other problems. Here, Cisco has not produced a report by the Committee *at all*. One of the whereas clauses on page 6 of the Board's seven-page Resolution recites that "the Committee presented its conclusions and recommendations to the Board on December 10, 2020," and that is literally all we are told about any sort of report by the Committee. At oral argument, Cisco confirmed that the Committee did not provide a written report to the Board.

To be clear, there is no legal requirement for a committee to prepare a written report, and when, for example, a demand is made three months before the statute of limitations is set to expire, eschewing a written report may be entirely reasonable. *See, e.g., Belendiuk v. Carron*,

7

1    2014 WL 3589500, *6 (Del. Ct. Chancery July 22, 2014).  Rather, the Court's point is that when

2    there is no written committee report, there is nothing that documents the committee's

3    investigation, its analysis, its thoroughness (or lack thereof), or whether the investigation was

4    robust or halfhearted and for show.  All of that information can only come from discovery.  Here,

5    no written committee report exists, and so under the case law, this counsels strongly in favor of

6    discovery.

7            The Board Resolution adopting the Committee's recommendation not to pursue the claims

8    at issue is almost entirely empty of substantive content and in no way substitutes for a Committee

9    report.  The Resolution describes the procedural steps the Committee took in conducting the

10   investigation, but largely avoids describing what any of the evidence showed.  For example, it

11   recites that the Committee "[i]nterviewed twenty-two witnesses, including the Company's Chief

12   Executive Officer and other employees, officers and directors (including the two Committee

13   members), and two third parties," but it provides no clue about what any of them said.  We don't

14   even know who most of the witnesses were.  Between the Board Resolution and the Capellas and

15   Kristy Declarations, we learn that the 22 witnesses included Chuck Robbins (Cisco's CEO and

16   Chairman), Fran Katsoudas (Cisco's EVP and Chief People Officer), Shari Slate (Cisco's Chief

17   Inclusion and Diversity Officer), and Michael Capellas and Rog McGeary (the Committee

18   members).  ECF No. 49 ¶ 10; ECF No. 50 ¶ 8 & Ex. A.  The other 17 witnesses are not identified,

19   though paragraph 8 of the Kristy Declaration supports the conclusion that they had relevant job

20   responsibilities.  The Court supposes that if the statements of the 22 witnesses demonstrated

21   knowledge of the relevant facts, were consistent with each other, and provided information that

22   addressed the important aspects of the claims at issue, that could go a long way toward showing a

23   good faith investigation.  By contrast, if several or many of these witnesses did not demonstrate

24   relevant knowledge, or if the witnesses gave statements that contradicted each other on material

25   issues, or if the witness statements did not cover important aspects of the proposed claims, that

26   would tend to show that further inquiry was needed for a good faith investigation.  There is no

27   legal doctrine that says that 22 is the magic number of witnesses to interview for a good faith

28   investigation, irrespective of what they know or say.

United States District Court
Northern District of California

1    Similarly, the Resolution recites that the Committee "reviewed and analyzed" many

2 different types of documents, but for the most part it does not provide any information about what

3 the documents tended to show.  As one example, the Resolution recites that the Committee

4 "[r]eviewed and analyzed relevant materials regarding employment disputes and pay parity

5 commitments and progress, including documents and communications pertaining to relevant

6 employment or pay discrimination claims against the Company."  If those documents showed

7 Cisco's robust and successful commitment to diversity and appropriate and successful pay parity

8 commitments, they could help to show there was a good faith investigation.  But if the documents

9 painted an unclear picture, or contradicted each other in material ways, or had important gaps in

10 what they explained, that could show a need for further inquiry before one could conclude that a

11 good faith investigation had been conducted.

12    Or consider the recital that the Committee "[r]eviewed and considered comparative

13 analyses of the Company's inclusion and diversity efforts to industry peers."  If the comparative

14 analyses were robust and showed Cisco's industry-leading performance, that could help show this

15 was a good faith investigation.  By contrast, if the comparative analyses were inconclusive, that

16 could indicate the need for further inquiry.  Further, if the comparative analyses showed that

17 Cisco's performance was solidly below the industry norm, or even horrible, the decision not to

18 pursue the claims in the face of that evidence could make the investigation look like a whitewash.

19    The Court is not going to go through each and every category of documents that the

20 Resolution says the investigation considered because you get the point.  As with the witness

21 interviews, the general point with the documents is the same:  If the documents were consistent,

22 supportive of Cisco's position on the merits, and addressed the important aspects of the claims at

23 issue, that would tend to show a good faith investigation.  By contrast, if the documents were

24 contradictory, or did not really show anything, or had significant holes or gaps in what they

25 explained, that would suggest the need for further inquiry.  And if the documents were in many

26 cases bad for Cisco, they could potentially make the investigation look like a whitewash.

27    As Cisco acknowledges, "proof . . . that the investigation has been . . . so shallow in

28 execution, or otherwise so *pro forma* or halfhearted as to constitute a pretext or sham . . . would

9

1    raise questions of good faith . . . which would never be shielded by [the business judgment]

2    doctrine." *Desaigoudar*, 108 Cal. App. 4th at 189 (simplified).  Here, where there is no

3    meaningful description or analysis of what the evidence uncovered by the investigation showed, it

4    remains possible that the investigation was broad in concept, but shallow in execution, *pro forma*

5    and halfhearted, and Plaintiff is entitled to discovery to see if that was the case.

6         The absence of a written Committee report, combined with a Board Resolution that is a

7    complete black box that provides no meaningful assessment of what the investigation found,

8    necessitates discovery.  The only way for Plaintiff to have any meaningful opportunity to oppose

9    the motion to terminate is discovery.  Otherwise, the investigation would remain essentially a

10   mystery, with Plaintiff knowing only that one occurred, but having no information about whether

11   it was done in good faith.

12        Accordingly, the Court grants Plaintiff's motion for discovery.  The Court orders Cisco to

13   produce (1) the Committee's oral or written report concerning the August 5, 2020 litigation

14   demand, (2) the Committee's analysis (if it exists) of the demographic composition of the

15   candidate pool from which the Defendant directors nominated candidates to Cisco's Board, (3) the

16   Committee's meeting minutes, (4) all documents considered by the Committee, (5) transcripts,

17   notes and summaries of witness interviews conducted by the Committee, and (6) all writings and

18   communications between the individual Defendants and the Committee regarding this case or the

19   litigation demand.  With respect to item #1, the Court understands from the hearing that no written

20   Committee report exists.  However, Cisco stated that there was a PowerPoint presentation to the

21   Board in connection with the Committee's oral presentation and that the Board meeting minutes

22   may reflect information provided by the Committee.  The PowerPoint presentation and the

23   meeting minutes fall within the scope of this order.  They are relevant because they may show

24   what information the Board did or did not have when it adopted the Resolution.[2]  Item #2 (if it

25   exists) is relevant to whether the Committee's investigation was done in good faith, and the

26

27   _____

28   [2] Cisco's counsel was unsure during the hearing whether the PowerPoint presentation might
     contain attorney-client privileged or work product material.  The Court expresses no view on any
     claims of privilege.

United States District Court
Northern District of California

nonexistence of this item is relevant for the same reason.  Item #3 is relevant to show the Committee's proceedings and actions it undertook in the course of the investigation, as diligence will tend to show good faith and lack of diligence may show the opposite.  Items #4 and #5 are relevant for the reasons described above because they are the materials the Committee and its counsel reviewed in the course of the investigation.  Item #6 is relevant to show if the investigation was thorough as opposed to *pro forma* and halfhearted.  As to depositions, Plaintiff asked "to take the deposition of each of the named defendants that submitted declarations in support of the Motions."  ECF No. 62 at 2.  During the hearing, Plaintiff agreed that despite the use of the plural, Michael Capellas is the only person who satisfies both criteria.  As Capellas was on the Committee and can testify to the substance of the evidence the investigation reviewed and the Committee's analysis of it, that deposition is relevant, and the Court grants Plaintiff's request.

Finally, if Cisco withdraws its pending motion to terminate the derivative litigation without prejudice to renewing it later in the event that the Complaint or an amended complaint gets past a motion to dismiss, the Court will stay this discovery order.  Proceeding with all this discovery has the potential to be an expensive waste of time if the individual Defendants' motion to dismiss is ultimately successful.  However, if Cisco insists on proceeding with its pending motion to terminate, then the Court unfortunately must order this discovery because it is the only way Plaintiff will have a fighting chance to oppose that motion.

Cisco argues that "[i]n the normal demand-made circumstance, a plaintiff awaits the outcome of the investigation it demanded and then, if there is a basis for assailing the investigation, files suit with particularized allegations explaining the basis for challenging the result, all of which is then tested on a motion to dismiss," ECF No. 62 at 7, and Cisco cites *Stoner v. Walsh*, 772 F. Supp. 790 (S.D.N.Y. 1991) as support.  That argument sounds reasonable, and *Stoner* does stand for the proposition that when the complaint on its face fails to adequately allege a problem with the special committee's investigation, no discovery is necessary for the plaintiff to be able to amend the complaint to state a claim.  *See id*. at 807.  But the Court already said that in this order.  *Supra*, page 3 ("This motion by Cisco is two different things.  First, it is a motion to dismiss, arguing that the Complaint fails to satisfy the particularity requirement in Rule 23.1(b)(3).

This is a pleadings motion (duplicative of the same argument brought by the individual Defendants), and no discovery is necessary for Plaintiff to respond to it.").  The Court's order allowing discovery relates to the second aspect of ECF No. 48 – the motion to terminate – which is not a pleadings motion.  To give an analogy, what Cisco did is similar to filing a motion, the first half of which is a motion to dismiss under Rule 12(b)(6) and the second half of which is a motion for summary judgment under Rule 56 – and then arguing that the plaintiff should be denied any discovery because the complaint might fail to state a claim.  No one forced Cisco to file a motion to dismiss *and* a motion to terminate in the same document.  The latter motion does warrant discovery, particularly on the record here, if Cisco continues to press it even before the pleadings challenges are resolved.

**IT IS SO ORDERED.**

Dated: June 24, 2021

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California